STATE OF NORTH CAROLINA v. CHICARION O-RONTE LEE

No. COA02-354

(Filed 3 December 2002)

## 1. Identification of Defendants— showup procedure—motion to suppress—suggestiveness

The trial court did not err in a robbery with a dangerous weapon case by failing to suppress eyewitness identifications of defendant based on a showup procedure used at the restaurant where the crime occurred, because defendant failed to demonstrate that the showup was impermissibly suggestive and created a substantial likelihood of irreparable misidentification when: (1) the eyewitnesses had sufficient opportunity to observe defendant earlier in the evening before the showup and one of the witnesses was familiar with defendant; (2) the time period was sufficiently proximate to support the reliability of the identification; (3) the potential suggestiveness of the showup was mitigated by the fact

that the eyewitnesses were shown a different individual shortly before defendant was brought to the restaurant and none of the eyewitnesses identified the first suspect even though he wore a shirt with the same logo as the shirt worn by one of the robbers; (4) although defendant was handcuffed when he first arrived at the showup, this alone is insufficient to make the showup impermissibly suggestive; and (5) the trial court considered that the eyewitnesses' in-court identifications were based on their recollection of the crime and not the subsequent showup.

2. **Evidence— exclusion of expert testimony—eyewitness confidence, eyewitness memory, and showups**

The trial court did not err in a robbery with a dangerous weapon case by excluding expert testimony about eyewitness confidence, eyewitness memory, and showups, because: (1) the overwhelming evidence of defendant's guilt was sufficient to permit a jury to draw inferences without the aid of expert testimony; and (2) the probative value of the expert's testimony was outweighed by its likely danger to mislead the jury and confuse the issues.

3. **Appeal and Error— preservation of issues—failure to assign error**

The trial court did not abuse its discretion in a robbery with a dangerous weapon case by denying defendant's oral motion in limine regarding eyewitness confidence, because while defendant offered an objection to this evidence at trial, he failed to assign error to the evidentiary rulings by the trial court on this issue as required by N.C. R. App. P. 10(a).

4. **Appeal and Error— preservation of issues—questions regarding eyewitness memory—failure to develop argument**

Although defendant contends the trial court abused its discretion in a robbery with a dangerous weapon case by sustaining the State's objections to defendant's two questions regarding eyewitness memory during jury voir dire, this assignment of error is overruled because: (1) defendant failed to develop this argument; and (2) defendant failed to demonstrate that the trial court's decision was arbitrary or that he was prejudiced by exclusion of the questions.

**5. Appeal and Error— preservation of issues—questions regarding publication—failure to develop argument**

Although defendant contends the trial court abused its discretion in a robbery with a dangerous weapon case by prohibiting defendant from cross-examining a detective about procedures in a publication from the U.S. Justice Department, this assignment of error is overruled because: (1) defendant failed to develop this argument; and (2) defendant failed to demonstrate that the trial court's decision was arbitrary or that he was prejudiced by exclusion of the questions.

Appeal by defendant from judgment dated 8 November 2001 by Judge Knox V. Jenkins, Jr. in Superior Court, Johnston County. Heard in the Court of Appeals 30 October 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*William B. Gibson, for defendant-appellant.*

McGEE, Judge.

Chicarion O-Ronte Lee (defendant) was indicted on 24 July 2000 for robbery with a dangerous weapon. The evidence presented at trial tended to show that Wayne Edward Hinerman (Hinerman) and his sister Heather Metz (Metz) stopped "just after dark" on 9 June 2000 at a McDonald's restaurant in Smithfield, North Carolina to use a pay telephone. While at the pay telephone, defendant and DaQuon Oliver (Oliver) walked through the well-lit parking lot and approached Metz's vehicle. Defendant stopped at the rear of the vehicle while Oliver approached the open passenger window and asked where he could get some weed. Hinerman replied that he did not know. Oliver pointed a gun toward Hinerman's ribs and demanded Hinerman's money. Hinerman refused and Oliver repeated his demand, but Hinerman continued to refuse. Defendant encouraged Oliver to be more aggressive and to demand things. Metz pulled money from her purse and threw it at Hinerman, who gave it to Oliver. Defendant told Oliver to take Hinerman's cell phone. Oliver took the cell phone and he and defendant left on foot. Hinerman immediately entered the McDonald's restaurant and called 911.

Deputy Jason Crocker (Deputy Crocker) of the Johnston County Sheriff's Department received a call from his dispatcher and responded to the call with his K-9 dog. The dog picked up the most

recent scent and tracked it for a couple of blocks to the door of a trailer occupied by Alice Lee (Lee), defendant's mother. The dog circled the trailer but did not pick up any more of the scent. Detective Steve Knox (Detective Knox) of the Smithfield Police Department joined Deputy Crocker at the trailer. Lee allowed them both to enter her home. Lee told the officers that her son had recently come home, changed shirts, and exited through the back door. The officers searched defendant's bedroom and asked Lee to have defendant call them when he returned home. The officers then left the trailer.

Shortly after leaving Lee's trailer, Detective Knox and Lieutenant Bob Jones (Lieutenant Jones) arrested a suspect wearing a shirt that matched the description of the shirt worn by the gunman. Lieutenant Jones took the suspect to the McDonald's restaurant for a showup with eyewitnesses. Hinerman sat inside the police car while the suspect stood in front of the police car's headlights. Hinerman said the suspect was wearing the same type of shirt as the gunman, but said the suspect was not one of the robbers. Two other eyewitnesses, Barry Braglin (Braglin) and Tabatha McDonald (McDonald), also said the suspect was not one of the robbers.

Defendant returned to Lee's trailer and Lee contacted Detective Knox. Detective Knox returned to Lee's trailer and questioned defendant about the robbery. Defendant denied involvement with the robbery and reluctantly agreed to go with Detective Knox to the McDonald's restaurant for a showup. Detective Knox took defendant to the McDonald's restaurant, removed his handcuffs, and led him into the restaurant for a showup with the eyewitnesses. Hinerman, Braglin, and McDonald indicated that defendant was one of the robbers.

Defendant testified that he returned home after playing basketball with friends. Defendant said that he went home and changed shirts, washed up, and went to a friend's house to watch a basketball game. A short while later, defendant's aunt went over to the friend's house to tell defendant that his mother wanted to speak to him about a robbery, and defendant returned home. Defendant continued to deny any involvement with the robbery.

A jury convicted defendant of robbery with a firearm on 8 November 2001. The trial court sentenced defendant to a minimum of fifty-one months and a maximum of seventy-one months in prison. Defendant appeals.

**[1]** Defendant first argues the trial court erred by failing to suppress eyewitness identifications of defendant and that such error denied defendant his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. Defendant contends the in-court identifications were impermissibly tainted by the showup procedure used at the McDonald's restaurant. Defendant has failed to preserve the issue of Hinerman's in-court identification for appeal. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1). While defendant objected to Hinerman's out-of-court identification, the transcript shows that defendant failed to object to Hinerman's in-court identification. Accordingly, Hinerman's in-court identification is not before this Court for review. *See State v. Gaither*, 148 N.C. App. 534, 539, 559 S.E.2d 212, 215-16 (2002) (stating that a defendant must object to identification testimony when offered at trial in order to preserve the matter for appellate review). However, the in-court identifications of McDonald and Braglin were properly objected to and are before this Court for review.

"Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983). While showups are strongly disfavored methods of identification, *see State v. Matthews*, 295 N.C. 265, 285, 245 S.E.2d 727, 739 (1978), this Court has approved the use of showups on numerous occasions. *In re Stallings*, 318 N.C. 565, 569, 350 S.E.2d 327, 329 (1986). Showups are an unrestrictive means of determining if a suspect committed the crime in question and they ensure an innocent party's minimum involvement with the criminal justice system. *Id.* at 570, 350 S.E.2d at 329. The trial court must employ the totality of the circumstances test to evaluate the reliability of a showup identification and "determine whether the procedures created a substantial likelihood of irreparable misidentification." *State v. Fowler*, 353 N.C. 599, 617, 548 S.E.2d 684, 697-98 (2001); *see Stallings*, 318 N.C. at 571, 350 S.E.2d at 330.

> Some of the factors that may be examined in determining the reliability of a showup identification are (1) the witness' opportunity to observe the accused, (2) the witness' degree of attention, (3) the accuracy of the witness' description, (4) the witness' level of

certainty, and (5) the time elapsed between the crime and the confrontation.

*Id.*; *see Neil v. Biggers*, 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411 (1972); *State v. Wilson*, 313 N.C. 516, 529, 330 S.E.2d 450, 460 (1985). A trial court's findings of fact regarding the circumstances surrounding an identification are binding on appeal if they are supported by competent evidence. *State v. Hannah*, 312 N.C. 286, 291, 322 S.E.2d 148, 151-52 (1984).

In the present case, defendant has failed to demonstrate that the showup was impermissibly suggestive and created a substantial likelihood of irreparable misidentification. The evidence in the record demonstrates that the eyewitnesses had sufficient opportunity to observe defendant earlier in the evening before the showup. McDonald testified that she and Oliver had worked together at the McDonald's restaurant for two months and that Oliver was at work with her earlier in the day. Additionally, McDonald said that Oliver had returned to the restaurant with defendant twice after Oliver had left work. McDonald stated that she had no trouble seeing the faces of defendant and Oliver that evening.

Testimony by McDonald indicates that she was familiar with defendant and Oliver before the robbery and was able to observe both individuals during the course of the robbery. The trial transcript also indicates that McDonald was certain about her identification and was attentive to the events comprising the robbery. Additionally, McDonald's identification of defendant in the showup occurred a couple of hours after the robbery. This time period was sufficiently proximate to support the reliability of the identification.

Braglin testified that he and his wife were driving through the parking lot of the McDonald's restaurant and observed two black males interacting with individuals inside a car at the time of the robbery. Braglin testified that he circled the McDonald's restaurant several times and was able to observe the individuals from a range of five to six feet in a well-lit area. Braglin testified that he was able to see their faces and observe their physical build and clothing. Braglin's identification demonstrated a high level of certainty and attentiveness and was based on specific characteristics from his observation. Additionally, the showup was conducted only a couple of hours after Braglin's observations, making the identification sufficiently proximate in time.

The potential suggestiveness of the showup is further mitigated by the fact that the eyewitnesses were shown a different individual shortly before defendant was brought into the McDonald's restaurant. None of the eyewitnesses who testified identified the first suspect, even though he wore a shirt with a logo that was the same logo as on a shirt worn by one of the robbers. The eyewitnesses had a sufficient basis for their identification to distinguish between defendant and other suspects. The presentation of another suspect provided an alternative to the eyewitnesses, which reduced the risk that the subsequent showup was impermissibly suggestive.

While defendant was handcuffed when he first arrived at the showup, this alone is insufficient to make the showup impermissibly suggestive. Defendant has failed to demonstrate how this occurrence requires exclusion of the showup. The evidence in the record demonstrates that the eyewitnesses had a sufficient basis for their in-court identification beyond the showup. The trial court made the appropriate findings of fact regarding the eyewitness identification and those findings were supported by competent evidence in the record. The trial court considered that the eyewitnesses' in-court identifications were based on their recollection of the crime and not the subsequent showup. Considering the totality of the circumstances, we do not believe the in-court identifications by McDonald and Braglin were tainted by an impermissibly suggestive showup that deprived defendant of his due process rights. This assignment of error is without merit.

[2] Defendant next argues the trial court erred in excluding testimony by Dr. Reed Hunt (Dr. Hunt) about eyewitness confidence, eyewitness memory, and showups. Defendant contends this exclusion deprived him of his Fifth and Fourteenth Amendment due process rights under the United States Constitution.

" 'It is undisputed that expert testimony is properly admissible when such testimony can assist the jury to draw certain inferences from facts because the expert is better qualified.' " *State v. Locklear*, 349 N.C. 118, 147, 505 S.E.2d 277, 294 (1998) (quoting *State v. Bullard*, 312 N.C. 129, 139, 322 S.E.2d 370, 376 (1984)), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999). The trial court must balance "the probative value of the testimony against its potential for prejudice, confusion, or undue delay." *State v. Knox*, 78 N.C. App. 493, 495, 337 S.E.2d 154, 156 (1985); *see* N.C. Gen. Stat. 8C-1, Rule 403 (2001).

This Court has previously addressed the issue of the admissibility of expert testimony on eyewitness identifications and has held that "the admission of expert testimony regarding memory factors is within the trial court's discretion, and the appellate court will not intervene where the trial court properly appraises probative and prejudicial value of the evidence under Rule 403 and the Rules of Evidence."

*State v. Cole*, 147 N.C. App. 637, 642, 556 S.E.2d 666, 670 (2001) (quoting *State v. Cotton*, 99 N.C. App. 615, 621, 394 S.E.2d 456, 459 (1990)); *see Bullard*, 312 N.C. at 140, 322 S.E.2d at 376.

In the present case, the trial court conducted a *voir dire* hearing and made findings of fact regarding the expert witness's proposed testimony. "The trial court's findings of fact following a *voir dire* hearing are binding on this court when supported by competent evidence." *State v. Lane*, 334 N.C. 148, 154, 431 S.E.2d 7, 10 (1993). However, conclusions of law drawn from these findings of fact are reviewable on appeal. *Id.* The trial court found as fact that Dr. Hunt, the proposed witness, had not interviewed the victims, did not visit the crime scene, and did not observe any of the eyewitnesses' testimony at trial. The sole basis for Dr. Hunt's testimony was his review of the eyewitnesses' testimony at a suppression hearing and research studies conducted by other experts independent of these facts. The trial court determined that the evidence was not case specific and lacked probative value. The trial court excluded the evidence because the probative value was outweighed by the danger that it would confuse the jury and that it would be unduly prejudicial in defendant's favor.

While expert testimony concerning eyewitness identification may be appropriate in some cases, we do not believe its admission was warranted in the present case. The eyewitnesses had sufficient opportunity to observe defendant and they were attentive. The identification of defendant by the three eyewitnesses was detailed and possessed a high level of certainty. The identifications were corroborated between the three eyewitnesses, significantly reducing the risk of misidentification about which Dr. Hunt intended to testify. The overwhelming evidence of defendant's guilt was sufficient to permit a jury to draw inferences without the aid of expert testimony. The probative value of Dr. Hunt's testimony was outweighed by its likely danger to mislead the jury and confuse the issues. This assignment of error is without merit.

**[3]** Defendant argues the trial court abused its discretion in denying defendant's oral motion *in limine* regarding eyewitness confidence. "On appeal the issue is not whether the granting or denying of the motion *in limine* was error, as that issue is not appealable, but instead whether the evidentiary rulings of the trial court, made during the trial, are error." *T&T Development Co. v. Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 602-03, 481 S.E.2d 347, 349 (1997). No prejudice results from a denial of a motion *in limine* because the defendant remains free to object to admission of the evidence during trial. *See Hall v. Hotel L'Europe, Inc.*, 69 N.C. App. 664, 665, 318 S.E.2d 99, 101 (1984). While defendant offered an objection to this evidence at trial, he failed to assign error to the evidentiary rulings by the trial court on this issue. Accordingly, this issue is not before us for review. *See* N.C. R. App. P. 10(a). This assignment of error is overruled.

**[4]** Defendant argues the trial court abused its discretion in sustaining the State's objections to defendant's two questions regarding eyewitness memory during jury *voir dire*. " 'The trial court has the duty to control and supervise the examination of prospective jurors.' Regulation of the extent and manner of inquiries during *voir dire* rests largely in the trial court's discretion." *State v. Simpson*, 341 N.C. 316, 336, 462 S.E.2d 191, 202 (1995) (quoting *State v. Green*, 336 N.C. 142, 164, 443 S.E.2d 14, 27, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d. 546 (1994)), *cert. denied*, 516 U.S. 1161, 134 L. Ed. 2d 194 (1996). "Abuse of discretion results where the court's ruling is manifestly usupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Defendant does not develop this argument and fails to demonstrate that the trial court's decision was arbitrary or that he was prejudiced by exclusion of the questions. This assignment of error is overruled.

**[5]** Finally, defendant argues the trial court abused its discretion by prohibiting defendant from cross-examining Detective Knox about procedures in a publication from the U.S. Justice Department entitled, *Eyewitness, Evidence, A Guide for Law Enforcement*. "The scope of cross-examination rests in the discretion of the trial judge, and his rulings thereon will not be disturbed absent a showing of abuse of discretion." *State v. Royal*, 300 N.C. 515, 528, 268 S.E.2d 517, 526 (1980). Defendant does not develop this argument, fails to demonstrate that the trial court's decision was arbitrary, and fails to show that he was prejudiced by exclusion of the questions. This assignment of error is overruled.

No error.

Judges HUDSON and THOMAS concur.