STATE OF NORTH CAROLINA v. ABRAHAM HARRISON

No. COA04-515

(Filed 5 April 2005)

**1. Constitutional Law— effective assistance of counsel— untimely motion to suppress**

Although defendant contends he received ineffective assistance of counsel in a second-degree kidnapping case based on defense counsel's untimely motion to suppress an alleged impermissibly suggestive identification procedure resulting from a show-up, this assignment of error is overruled because: (1) if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient; and (2) in the instant case even if defense counsel's actions were deficient, defendant is not entitled to relief when there was no meritorious basis to support the suppression of the victim's identification of defendant in light of the totality of circumstances.

**2. Kidnapping— second-degree—motion to dismiss—sufficiency of evidence—terrorizing victim**

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree kidnapping based on alleged insufficient evidence of defendant's intent to terrorize the victim, because the evidence tended to show that: (1) defendant restrained the victim against her will and attempted to drag her across the street and toward nearby bushes; (2) defendant grabbed the victim from behind and choked her, repeatedly telling her she better shut up; (3) at one point during the incident, defendant pushed the victim to the ground, dove on top of her, and fondled and put his hands all over her chest; (4) the victim pleaded for defendant to let her go and screamed repeatedly for help from nearby residents, and defendant let her go only after being alerted that law enforcement officers were on their way to the scene; (5) an officer testified that the victim was very emotional and distraught after the incident; and (6) a witness stated that the victim was hysterical following the incident and that she was struggling to get free while she was being dragged from her head while being hugged around her neck.

**3. Kidnapping— second-degree—instruction—false imprisonment**

The trial court did not err in a second-degree kidnapping case by denying defendant's motion to instruct the jury on the lesser-included offense of false imprisonment, because: (1) the record tends to show that defendant restrained the victim for the purpose of terrorizing her; and (2) even though defendant contends the evidence also tends to show that he intended to sexually assault the victim, the superseding indictment charged defendant with kidnapping the victim for the purpose of terrorizing her and the State is only required to prove the alleged purpose in order to sustain a conviction of kidnapping.

Judge STEELMAN dissenting.

Appeal by defendant from judgment entered 30 September 2003 by Judge Richard L. Doughton in Guilford County Superior Court. Heard in the Court of Appeals 8 December 2004.

*Attorney General Roy Cooper, by Assistant Attorney General M. Lynne Weaver, for the State.*

*Miles & Montgomery, by Lisa Miles, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant appeals his conviction for second-degree kidnapping and obtaining habitual felon status. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error.

The State's evidence presented at trial tends to show the following: On 4 August 2002, Karen Denise Robinson ("Robinson") was walking in High Point when she was approached by defendant, who asked Robinson if "the street back there" was Centennial Street. Robinson replied that it was, and continued walking down the street. Defendant initially walked away from Robinson, but soon "turned around and ran and caught up with" her. Upon approaching Robinson for the second time, defendant asked Robinson where "the shelter" was located. Robinson provided defendant with directions to "a place where they house men" and then "turned around from [defendant] to walk off[.]" However, defendant grabbed Robinson around her shoulder area and then attempted to drag her to the opposite side of the street. Robinson began screaming, and after defendant dragged her across the street, Robinson dropped to her knees to prevent defend-

ant from further dragging her. Defendant then pushed Robinson to the ground and "dived on top of [her]." Robinson testified that, after pushing her to the ground, defendant reached his hand inside Robinson's shirt and "fondled and put his hands all over me up here, and everywhere."

Marcie Ruth Craig ("Craig"), who lived in a nearby residence, heard Robinson's screams and yelled out of her window, "Ma'am, I'm calling the police right now." A few minutes later, Craig returned to the window and yelled, "Ma'am, the police are on their way." At this point, defendant "jumped up and ran . . . straight on out toward Centennial."

High Point Police Department Officer Christy Gambill ("Officer Gambill") was the first law enforcement officer to arrive at the scene. When Officer Gambill arrived, Robinson was "distraught, crying, upset" and talking to Craig and Craig's husband. Robinson told Officer Gambill which direction her assailant had run, and Robinson stated that the individual "was wearing a white shirt and white pants." Approximately thirty minutes after Officer Gambill arrived at the scene, High Point Police Department Officer Otis Hamilton ("Officer Hamilton") radioed Officer Gambill and informed her that he had located an individual fitting the description of Robinson's assailant. High Point Police Department Lieutenant Lawrence L. Casterline, Jr. ("Lieutenant Casterline"), directed Officer Gambill to drive Robinson to Officer Hamilton's location "to do a show-up to see if that was the person."

When Officer Gambill and Robinson arrived at Officer Hamilton's location, defendant was sitting in the rear seat of Officer Hamilton's patrol car. Immediately upon seeing defendant, Robinson told Officer Gambill, " 'That's him, that's him,' and [Robinson] became very emotional and distraught." Officer Gambill asked Robinson if she was "absolutely sure" that defendant was the individual who attacked her, and Robinson replied, "yes." Defendant was then placed under arrest and transported to the High Point Police Department.

Upon arrival at the High Point Police Department, defendant was placed in a holding cell. While Officer Hamilton spoke with Lieutenant Casterline, defendant knocked on the door of the holding cell and told Officer Hamilton and Lieutenant Casterline that he would like to speak to them "about what had took place and what he was involved in." Defendant then "voluntarily made several statements" to Officer Hamilton and Lieutenant Casterline, includ-

STATE v. HARRISON

[169 N.C. App. 257 (2005)]

ing telling the officers, "I'm your man, I'm your man." According to Officer Hamilton, defendant told the officers "he approached a female after seeing her in the area of Kivett and North Centennial[,] . . . did follow her, and . . . approached [her] to ask her for directions." Defendant told the officers that as the female gave him directions, he "grabbed her by the throat and began choking her." Defendant "stated that it was important for him to be honest and to be accountable for his involvement in this incident[,] . . . [and] that he would just deal with the consequences of his actions." He also explained that the female "was wearing a very short skirt[,] . . . that women in short skirts have always turned him on sexually[,] . . . that he had recently just gotten out of jail, and that he also had a girlfriend that was also locked up, and he missed her very dearly." Defendant then provided the officers with the following written statement:

> I asked this lady for direction[s], and when I got up close to her I attacked her by grabbing her around the neck and choking her for no reason at all.

On 22 November 2002, defendant was indicted for misdemeanor assault on a female and second-degree kidnapping for the purpose of facilitating the commission of a felony. On 8 May 2003, a superceding indictment was filed, by which defendant was again charged with misdemeanor assault on a female and second-degree kidnapping. However, the superceding indictment alleged that defendant kidnapped Robinson "for the purpose of terrorizing" her rather than for the purpose of facilitating the commission of a felony. On 4 June 2003, defendant was indicted for obtaining habitual felon status.

On 29 September 2003, defendant filed a motion to suppress the evidence of Robinson's identification of him. The trial court denied defendant's motion, and defendant's trial began the same day. At the close of the State's evidence, defendant moved the trial court to dismiss the charge of second-degree kidnapping and to instruct the jury on false imprisonment. The trial court denied both motions and instructed the jury on second-degree kidnapping as well as misdemeanor assault on a female. On 30 September 2003, the jury found defendant guilty of second-degree kidnapping and misdemeanor assault on a female, and defendant pled guilty to obtaining habitual felon status. The trial court arrested judgment on the misdemeanor assault conviction and subsequently sentenced defendant to a total of 151 to 191 months incarceration. Defendant appeals.

STATE v. HARRISON

[169 N.C. App. 257 (2005)]

We note initially that defendant's brief contains arguments supporting only five of the eight original assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2004), the three omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The issues on appeal are: (I) whether defendant received ineffective assistance of counsel; (II) whether the trial court erred by denying defendant's motion to dismiss the charge of second-degree kidnapping; and (III) whether the trial court erred by denying defendant's motion to instruct the jury on false imprisonment.

[1] Defendant first argues that he is entitled to a new trial because he received ineffective assistance of counsel. Defendant asserts that his trial counsel's failure to properly file a motion to suppress resulted in reversible error, in that his arrest resulted from an impermissibly suggestive identification procedure and any statements made by him were the fruit of a poisonous tree. We disagree.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). In order to meet this burden, defendant must satisfy the following two-part test, expressed in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

On appeal, this Court "engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct." *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004). "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Braswell*, 312 N.C. at

563, 324 S.E.2d at 248. "Thus, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Id.* at 563, 324 S.E.2d at 249.

In the instant case, the trial court rejected as untimely defendant's motion to suppress the identification by Robinson. The trial court noted that defendant's trial counsel filed the motion the day of trial and without an accompanying affidavit, despite the requirement that sworn affidavits accompany such motions and that such motions be made prior to trial and by 15 September 2003. After reviewing the record in the instant case, we conclude that even if defendant's trial counsel's actions were deficient, defendant is not entitled to relief because there was no meritorious basis to support the suppression of Robinson's identification of him.

"Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983). In the instant case, Robinson identified defendant during a "show-up," an often-criticized practice whereby a suspect is shown singularly to a witness or witnesses for the purposes of identification. "This identification procedure may be inherently suggestive for the reason that witnesses would be likely to assume that the police presented for their view persons who were suspected of being guilty of the offense under investigation." *State v. Turner*, 305 N.C. 356, 364, 289 S.E.2d 368, 373 (1982). However, "[p]retrial show-up identifications . . . even though suggestive and unnecessary, are not *per se* violative of a defendant's due process rights." *Id.* "The primary evil sought to be avoided is the substantial likelihood of irreparable misidentification." *Id.* Thus, where "[a]n unnecessarily suggestive show-up identification does not create a substantial likelihood of misidentification . . . under the totality of the circumstances surrounding the crime, the identification possesses sufficient aspects of reliability" to withstand a motion to suppress. *Id.*

Some of the factors that may be examined in determining the reliability of a showup identification are (1) the witness' opportunity to observe the accused, (2) the witness' degree of attention, (3) the accuracy of the witness' description, (4) the witness' level of

certainty, and (5) the time elapsed between the crime and the confrontation.

*State v. Lee*, 154 N.C. App. 410, 414-15, 572 S.E.2d 170, 174 (2002) (quoting *In re Stallings*, 318 N.C. 565, 571, 350 S.E.2d 327, 330 (1986)).

In the instant case, Robinson had ample opportunity to observe defendant during the incident, as she was within close proximity of defendant when he twice spoke to her on the street and then grabbed her and threw her to the ground. Although Robinson testified at trial that she "didn't really pay . . . no attention" to what defendant was wearing during the incident, Officer Gambill and Officer Hamilton both testified that Robinson informed officers at the scene that defendant was wearing a white shirt and white pants. When Officer Hamilton apprehended defendant approximately thirty minutes after the incident, defendant was dressed in white clothing. Robinson was immediately taken to defendant's location, where, as discussed above, Robinson told Officer Gambill, " 'That's him, that's him,' and became very emotional and distraught." When Officer Gambill asked Robinson whether she was "absolutely sure" that defendant was the individual who attacked her, Robinson said, "yes." In light of the totality of the circumstances, we conclude that the facts of the instant case do not support defendant's contention that the show-up was so impermissibly suggestive that it created a substantial likelihood of irreparable misidentification. Furthermore, defendant has failed to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698. Therefore, defendant's first argument is overruled.

[2] Defendant next argues that the trial court erred by denying his motion to dismiss the charge of second-degree kidnapping. Defendant asserts that the State produced insufficient evidence at trial to support an element of the charge. We disagree.

"In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn therefrom." *State v. Vick*, 341 N.C. 569, 584, 461 S.E.2d 655, 663 (1995). "[T]he trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). "Whether evidence presented con-

stitutes substantial evidence is a question of law for the court." *Id.* "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)).

N.C. Gen. Stat. § 14-39 (2003) defines the law of kidnapping in pertinent part as follows:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . . .
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]

Where the victim is released in a safe place or has not been seriously injured or sexually assaulted, the offense is second-degree kidnapping. N.C. Gen. Stat. § 14-39(b).

In the instant case, defendant contends that the State produced insufficient evidence to demonstrate that he kidnapped Robinson with the intent to terrorize her. "Terrorizing is defined as 'more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension.' " *State v. Davis*, 340 N.C. 1, 24, 455 S.E.2d 627, 639 (1995) (quoting *State v. Moore*, 315 N.C. 738, 745, 340 S.E.2d 401, 405 (1986)). "In determining the sufficiency of the evidence, 'the test is not whether subjectively the victim was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize' the victim." *Davis*, 340 N.C. at 24, 455 S.E.2d at 639 (quoting *Moore*, 315 N.C. at 745, 340 S.E.2d at 405). "[T]he victim's subjective feelings of fear [during the incident], while not determinative of the defendant's intent to terrorize, are relevant." *State v. Baldwin*, 141 N.C. App. 596, 604, 540 S.E.2d 815, 821 (2000). "The presence or absence of the defendant's intent or purpose to terrorize [the victim] may be inferred by the fact-finder from the circumstances surrounding the events constituting the alleged crime." *Id.* at 605, 540 S.E.2d at 821.

In the instant case, the evidence presented at trial tends to show that defendant restrained Robinson against her will and attempted to

drag her across the street and toward nearby bushes. Defendant grabbed Robinson from behind and choked her, repeatedly telling her that she "better shut up." At one point during the incident, defendant pushed Robinson to the ground, dove on top of her, and "fondled and put his hands all over" her chest. Robinson pleaded for defendant to let her go, and she screamed repeatedly for help from nearby residents. When defendant was alerted that law enforcement officers were on their way to the scene, he quickly let Robinson go and fled the scene. Officer Gambill testified that Robinson was "very emotional and distraught" after the incident, and Craig stated that Robinson was "hysterical" following the incident, "crying and shaking real bad[.]" Craig described Robinson "struggling to get free . . . she was being dragged from not only the head, but hugging around the neck, just being grabbed any which way she could." Craig saw defendant "try to force [Robinson] into the bushes" and later "just drop[] her to the concrete." In light of the foregoing evidence, we conclude that the State introduced sufficient evidence from which the jury could have concluded that defendant acted with the purpose of terrorizing Robinson. Therefore, we also conclude that the trial court did not err in denying defendant's motion to dismiss the charge of second-degree kidnapping, and, accordingly, we overrule defendant's second argument.

**[3]** Defendant next argues that the trial court erred in instructing the jury. Defendant asserts that the trial court was required to instruct the jury regarding the lesser-included offense of false imprisonment. We disagree.

"The crime of false imprisonment is a lesser included offense of the crime of kidnapping." *State v. Lang*, 58 N.C. App. 117, 118, 293 S.E.2d 255, 256, *disc. review denied*, 306 N.C. 747, 295 S.E.2d 761 (1982). "When there is evidence of guilt of a lesser offense, a defendant is entitled to have the trial court instruct the jury with respect to that lesser included offense[.]" *Id.* In *State v. Claypoole*, 118 N.C. App. 714, 717-18, 457 S.E.2d 322, 324 (1995), this Court distinguished second-degree kidnapping from false imprisonment as follows:

> The difference between kidnapping and the lesser-included offense of false imprisonment is the purpose of the confinement, restraint, or removal of another person. If the purpose of the restraint was to accomplish one of the purposes enumerated in N.C. Gen. Stat. § 14-39, then the offense is kidnapping. However, if the unlawful restraint occurs without any of the purposes specified in the statute, the offense is false imprisonment.

As discussed above, the record in the instant case tends to show that defendant restrained Robinson for the purpose of terrorizing her. However, defendant contends that the record also tends to show that defendant had "an intent to commit a sexual assault" upon Robinson. In support of this contention, defendant cites his statements to law enforcement officers following the incident, in which he informed the officers that Robinson was wearing a short skirt, that short skirts "turned him on sexually," and that he missed his recently-incarcerated girlfriend. According to defendant, these statements, when coupled with his actions during the incident—including his fondling of Robinson's chest and diving upon her—support a conclusion that he restrained Robinson with the intent to sexually assault her rather than terrorize her. Thus, defendant argues, a jury instruction regarding false imprisonment was necessary. We cannot agree.

We note that " 'kidnapping is a specific intent crime' " and that " 'the State is restricted at trial to proving the purposes alleged in the indictment.' " *Baldwin*, 141 N.C. App. at 603, 540 S.E.2d at 820-21 (quoting *Moore*, 315 N.C. at 743, 340 S.E.2d at 404). However, we also note that

> The purposes specified in G.S. 14-39(a) are not mutually exclusive. A single kidnapping may be for the dual purposes of using the victim as a hostage or shield and for facilitating flight, or for the purposes of facilitating the commission of a felony and doing serious bodily harm to the victim. So long as the evidence proves the purpose charged in the indictment, the fact that it also shows the kidnapping was effectuated for another purpose enumerated in G.S. 14-39(a) is immaterial and may be disregarded.

*State v. Hall*, 305 N.C. 77, 82, 286 S.E.2d 552, 555 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986); *see also Moore*, 315 N.C. at 743, 340 S.E.2d at 404 ("Although the indictment may allege more than one purpose for the kidnapping, the State has to prove only one of the alleged purposes in order to sustain a conviction of kidnapping.").

In the instant case, defendant contends that he was entitled to an instruction on the lesser-included offense of false imprisonment because the evidence tends to show that he intended to sexually assault Robinson. However, as discussed above, the superceding indictment charged defendant with kidnapping Robinson for the purpose of terrorizing her, and the State presented sufficient evidence at trial to support each element of that charge, including defendant's

intent to terrorize Robinson. We are not convinced that the trial court was required to instruct the jury regarding false imprisonment merely because the evidence indicates defendant also intended to sexually assault Robinson. Therefore, we conclude that the trial court did not err in denying defendant's request to instruct the jury regarding the lesser-included offense, and, accordingly, we overrule defendant's final argument.

In light of the foregoing conclusions, we hold that defendant received a trial free of prejudicial error.

No error.

Judge HUDSON concurs.

Judge STEELMAN dissents.

STEELMAN, Judge, dissenting.

Because I believe the trial court erred in refusing to submit the lesser included offense of false imprisonment to the jury, I am compelled to respectfully dissent.

The defendant was indicted for second-degree kidnapping pursuant to N.C. Gen. Stat. § 14-39(a)(3). The original indictment alleged that the kidnapping was for the purpose of facilitating the felony of rape. The superceding indictment upon which the State proceeded at trial stated that the defendant "unlawfully, willfully, and feloniously did kidnap Karen Robinson, a person who had attained the age of 16 years, by unlawfully removing the victim from one place to another, without her consent, for the purpose of terrorizing the said person so removed."

In order for the State to prove second-degree kidnapping in the instant case, it had to prove that the defendant's intent was to terrorize Robinson when he unlawfully removed her from one place to another. In *State v. Whitaker*, 316 N.C. 515, 342 S.E.2d 514 (1986), the State proceeded on a theory that the kidnapping was perpetrated in order to facilitate a felony, specifically rape. In discussing whether it was error for the trial court to have failed to instruct on the lesser included offense of false imprisonment the *Whitaker* Court stated:

The crime of false imprisonment is a lesser included offense of kidnapping. When any evidence presented at trial would permit

the jury to convict defendant of the lesser included offense, the trial court must instruct the jury regarding that lesser included offense. Failure to so instruct the jury constitutes reversible error not cured by a verdict of guilty of the offense charged. "So, whether a defendant who confines, restrains, or removes another is guilty of kidnapping or false imprisonment depends upon whether the act was committed to accomplish one of the purposes enumerated in our kidnapping statute." The crux of this question, then, concerns whether "there was evidence from which the jury could have concluded that the defendant, although restraining, confining and removing the victim, [did so] for some purpose other than . . . to commit [attempted second degree] rape."

*Id.* at 520-21, 342 S.E.2d at 518 (internal citations omitted) (brackets in original). "The trial court may refrain from submitting the lesser offense to the jury only where the 'evidence is clear and positive as to each element of the offense charged' and no evidence supports a lesser-included offense." *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000). " 'The determining factor is the presence of evidence to support a conviction of the lesser included offense.' " *State v. Kyle*, 333 N.C. 687, 703, 430 S.E.2d 412, 421 (1993), *quoting State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984).

Robinson testified at trial that after defendant had grabbed her and dragged her some distance, he pushed her to the ground, reached inside her shirt, and "fondled and put his hands all over me up here, and everywhere." Defendant made a statement to two officers that the victim was wearing a short skirt, that her attire "turned him on sexually[,]" and that he missed his girlfriend.

Defendant contends that this evidence demonstrates that his intent was to commit some form of sexual assault, and not to terrorize Robinson. The majority is correct in stating that the two purposes are not mutually exclusive; the defendant may have intended to both terrorize and sexually assault the victim. The State could have indicted defendant based on N.C. Gen. Stat. § 14-39(a)(2), removal for the purpose of facilitating the commission of a felony (in this instance, sexual assault), as well as on N.C. Gen. Stat. § 14-39(a)(3), removal for the purpose of terrorizing the victim. The State did not proceed under N.C. Gen. Stat. § 14-39(a)(2), however, and thus if the defendant's sole intent was to commit a sexual assault, he could not be convicted of second-degree kidnapping as indicted.

In the instant case, I assume *arguendo* that "the evidence was . . . sufficient to convict defendant of kidnapping for the purpose of [terrorizing the victim]. That, however, is not the issue." *State v. Lang*, 58 N.C. App. 117, 122, 293 S.E.2d 255, 258 (1982). "Only when the evidence of intent to commit [one of the enumerated purposes under N.C. Gen. Stat. § 14-39(a)] is overwhelming or uncontradicted should that factual issue of intent, which separates the greater offense from the lesser, be taken from the jury." *State v. Little*, 51 N.C. App. 64, 71, 275 S.E.2d 249, 253 (1981). The issue is whether there was any evidence from which the jury could conclude that the defendant removed the victim not for the purpose of terrorizing her, but for some other purpose.

The evidence in the instant case is neither overwhelming nor uncontradicted that the defendant removed the victim for the purpose of terrorizing her. All of the defendant's actions and statements are consistent with a purpose to sexually assault the victim in some fashion. The evidence that the defendant acted for the purpose of sexual gratification permits a reasonable inference that his purpose was *not* to terrorize. *See Lang*, 58 N.C. App. at 122, 293 S.E.2d at 258. " 'Evidence giving rise to a reasonable inference to dispute the State's contention,' is sufficient to support an instruction on a lesser offense." *State v. Hargett*, 148 N.C. App. 688, 692, 559 S.E.2d 282, 286 (2002).

In *Whitaker*, 316 N.C. at 517, 342 S.E.2d at 516, a female taxi driver was directed by the defendant to a dead end street whereupon he grabbed her by the throat, directed her to drive to a church parking lot, told her "I want to eat you," and told her to pull her pants down to her knees. The victim managed to get away from defendant before any sexual assault occurred. The defendant was convicted of second-degree kidnapping, based on a theory that he restrained and removed her for the purpose of facilitating the commission of a felony (attempted rape). On these facts, our Supreme Court held that because the evidence could reasonably allow the jury to infer that the purpose of the restraint and removal was a sexual assault not amounting to rape (that the defendant did not intend to have forced vaginal intercourse with the victim), it was error for the trial court to refuse to instruct the jury on false imprisonment. "The question of defendant's purpose in abducting the victim, being a question of his state of mind, should have been for the jury to decide, as the evidence did not point unerringly to a conclusion that defendant did or did not intend to attempt to rape the victim." *Id.* at 521, 342 S.E.2d at 518; *see also State v. Banks*, 295 N.C. 399, 245 S.E.2d 743 (1978).

Therefore, though the State's evidence may have been sufficient to go to the jury on the charge of kidnapping based on an intent to terrorize, the State's evidence of that intent was not overwhelming, and the State's own evidence was sufficient to support a jury finding that the defendant's intent was to commit a sexual assault, and not to terrorize the victim.

This is a terrible case where an innocent victim was brutally assaulted by a stranger. As much as I would like to join in the majority opinion, the Supreme Court holding in *Whitaker* mandates a new trial in this matter.