An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-668

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

STATE OF NORTH CAROLINA

v.                                    Rockingham County
                                      No. 10CRS000231
SHYMEL D. JEFFERSON


Appeal by defendant from judgment entered 8 June 2012 by Judge A. Moses Massey in Rockingham County Superior Court. Heard in the Court of Appeals 10 December 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Jill Ledford Cheek, for the State.*
>
> *John R. Mills for defendant-appellant.*


HUNTER, Robert C., Judge.


Shymel D. Jefferson ("defendant") appeals from judgment sentencing him to life imprisonment without the possibility of parole for one count of first-degree murder. On appeal, defendant argues that: (1) the sentence imposed violates N.C. Gen. Stat. § 15A-1340.19B (2013) and other state and federal constitutional provisions because defendant was a minor when the crime took place; (2) the trial court reversibly erred by

failing to make a finding that defendant's waiver of rights during custodial interrogation was knowing, willing, and understanding before admitting those custodial statements into evidence; (3) defendant's trial counsel was unconstitutionally ineffective for failing to move to suppress defendant's custodial statements; and (4) the trial court lacked jurisdiction to enter judgment because the indictment was fatally defective.

After careful review, we remand for resentencing but find no prejudicial error as to the remaining issues.

**Background**

Evidence was presented at trial which tended to show the following. On the night of 6 November 2009, defendant, Travis Brown, Shaquan Beamer ("Beamer"), and defendant's older cousin, Shavon Reid ("Shavon"), went to the Icehouse, a bar in Eden, North Carolina. Defendant was fifteen years old at this time and had been living with Shavon in Martinsville, Virginia. Prior to the night in question, defendant had begun carrying a pistol for protection. He brought the gun with him to the Icehouse but left it in the car when the group went inside.

At the Icehouse, defendant encountered Jason Gallant ("Gallant"), Timothy Seay ("Seay"), and Terris Dandridge

("Dandridge"). After about an hour in the bar, a fistfight broke out. Defendant, Dandridge, and Gallant were all involved; defendant and Dandridge were seen pushing each other. The fight was quickly broken up by bar security, and both groups were forced to go outside. Defendant left the bar and retrieved his gun from the car.

Once the crowd had moved into the street, Seay's group began taunting defendant's group. Defendant testified that he heard a gunshot during the encounter. He then fired his gun in the direction of the group of people where he thought the shot had come from until he ran out of bullets. Devin Turner, a witness to the incident, testified that the only people he saw firing were defendant and Shavon. Ultimately, two people were injured and one was killed as a result of the shooting. Gallant and Dandrige were wounded by gunshots to the wrist and leg, respectively. Seay was killed by a gunshot wound to the head and was also shot one time in the chest, with the bullet getting lodged in his shoulder. Police later recovered two types of shell casings from the scene - .40 caliber and .380. Expert testimony established that the nine .380 casings found at the scene and the bullet in Seay's shoulder were fired from defendant's gun.

After the shooting, defendant and Shavon returned to Martinsville. Defendant called his girlfriend, Melissa Manns ("Melissa"), and asked her to come pick him up in her car. Defendant and Melissa drove deep into the country at defendant's urging. Defendant then asked for the car to be stopped. Melissa testified that she then saw defendant get out of the car and throw an object into the woods, and that defendant told her "you all better not tell anybody where you took me." After they returned, Beamer informed Melissa and defendant that someone had been killed at the Icehouse. The next day, Melissa called the police and took the officers to where defendant had thrown the object into the woods; police recovered a gun from the area, which Melissa identified as defendant's.

About a day after the shooting, Shavon's older brother Demetrius Reid ("Demetrius") traveled to Martinsville to bring defendant back to Demetrius's home in Hampton, Virginia. Demetrius testified that he was willing to let defendant move in with him while defendant's mother was in jail. On the drive away from Martinsville, defendant broke down crying and told Demetrius that he shot a man who had "bumped him" at the Icehouse. Defendant told Demetrius that the man he shot had been regularly antagonizing him at parties. Demetrius drove

defendant back to Eden, where he was taken into custody and interrogated three times by Eden police officers. Before the first interview, defendant was apprised of his *Miranda* rights and signed a waiver of rights form. The first interview ended when defendant asserted his right to remain silent. The second interview was initiated by defendant, who told Demetrius that he wanted to speak to the officers. The second interview ended with defendant asserting his right to counsel. The third and final interview was again initiated by defendant; it was during this interview that he admitted to firing a gun and shooting someone at the Icehouse.

Defendant was indicted and tried as an adult for first-degree murder. The jury rejected the theories of premeditation and deliberation and acting in concert, but convicted defendant based on the felony murder rule, with the underlying felony being assault with a deadly weapon inflicting serious injury. He was sentenced to life imprisonment without the possibility of parole. Defendant entered timely notice of appeal.

**Discussion**

**I. Sentencing**

Defendant first argues that the sentence of mandatory life imprisonment without the possibility of parole violates N.C.

Gen. Stat. § 15A-1340.19B(a)(1) (2013) and this Court's ruling in *State v. Lovette*, __ N.C. App. __, 737 S.E.2d 432 (2013). The State concedes that the sentence imposed by the trial court violates North Carolina law and agrees that this case should be remanded for resentencing. Accordingly, we remand.

The General Assembly enacted section 15A-1340.19B in response to the United States Supreme Court's ruling in *Miller v. Alabama*, __ U.S. __, __, 183 L. Ed. 2d 407, 414-15 (2012), where the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Pursuant to section 15A-1340.19B(a)(1), the sentence for an individual under the age of 18 at the time of the offense who is convicted of first-degree murder solely on the basis of the felony murder rule shall be life imprisonment *with* parole. *See* N.C. Gen. Stat. §§ 15A-1340.19A, 15A-1340.19B(a)(1) (2013). In *Lovette*, this Court held that these provisions, as new rules of criminal procedure, "must be applied retroactively 'to all cases, state or federal, pending on direct review or not yet final.'" *Lovette*, __ N.C. App. at __, 737 S.E.2d at 441 (quoting *State v. Zuniga*, 336 N.C. 508, 511, 444 S.E.2d 443, 445 (1994)).

Here, defendant was fifteen years old at the time of the shooting, his conviction for first-degree murder was based solely on the felony murder rule, and the case was pending on direct appeal when section 15A-1340.19B came into effect.[1] Therefore, pursuant to *Lovette*, we remand for a new sentence.

Defendant also suggests that "[t]his case presents the Court with an opportunity to explain the state law basis for barring mandatory sentences of life without possibility of parole and the interaction between state and federal bars on cruel and/or unusual punishment." Because application of section 15A-1340.19B and the precedent from *Lovette* fully resolve this issue, we decline to address defendant's additional argument relating to the interplay between state and federal constitutional law.

## II. Finding as to Waiver of Rights

Defendant next argues that the trial court reversibly erred by admitting his custodial statements into evidence without first entering a finding that defendant "knowingly, willingly, and understandingly waived [his] rights" pursuant to N.C. Gen. Stat. § 7B-2101(d) (2013). We hold that the trial court erred by

---

[1] N.C. Gen. Stat. § 15A-1340.19B went into effect on 12 July 2012. *See* 2012 N.C. Sess. Laws 148, § 3.

failing to enter the required finding, but because the error was not prejudicial, we do not disturb the judgment on this ground.

"Before admitting into evidence any statement resulting from custodial interrogation, the court shall find that the juvenile knowingly, willingly, and understandingly waived the juvenile's rights." N.C. Gen. Stat. § 7B-2101(d) (2013). The State concedes that the trial court admitted defendant's custodial statements without entering the finding required by section 7B-2101(d). However, where defendant argues that violation of section 7B-2101(d) requires this Court to remand for a new evidentiary hearing, the State contends that violation of section 7B-2101(d) is reviewed under the prejudicial error analysis.

We agree with the State and find that *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991) is controlling as to the standard of review. In *Small*, the North Carolina Supreme Court analyzed the precursor to section 7B-2101, N.C. Gen. Stat. § 7A-595, which provided in language almost identical to the statute before us that "[b]efore admitting any statement resulting from custodial interrogation into evidence, the judge must find that the juvenile knowingly, willingly, and understandingly waived his rights." *See Small*, 328 N.C. at 187, 400 S.E.2d at 419; *see*

*also* 1998 Sess. Laws 202, §§ 5, 6 (repealing section 7A-595 and adding section 7B-2101 to the General Statutes). The trial court in *Small* admitted the juvenile defendant's custodial statements into evidence without entering the required finding that waiver of the defendant's rights was knowing, willing and understanding. *Small*, 328 N.C. at 187, 400 S.E.2d at 419. However, rather than remanding the case, the Supreme Court analyzed the trial court's violation of section 7A-595 under the prejudicial error analysis of N.C. Gen. Stat. § 15A-1443(a), whereby the defendant bears the burden of showing prejudice. The Court held:

> In light of the State's compelling evidence incriminating defendant, there is no "reasonable possibility that . . . a different result would have been reached at trial" whether defendant's statement was admitted or excluded. . . . The failure to make the finding thus did not affect the outcome of defendant's trial, and defendant has failed to carry his burden of showing prejudice from the trial court's failure to make the finding.

*Id*. (quoting N.C. Gen. Stat. § 15A-1443(a)). Thus, pursuant to *Small*, we will review the trial court's failure to comply with section 7B-2101(d) here for prejudicial error.

Defendant contends that his custodial admission to shooting someone in the leg at the Icehouse is the only direct evidence

of the underlying felony of assault with a deadly weapon inflicting serious injury, and thus, had this evidence been excluded, there exists a reasonable possibility that a different result would have been reached at trial. We disagree. The State put on a wide array of compelling evidence, including defendant's own testimony, which tended to prove beyond a reasonable doubt that defendant committed the crime of assault with a deadly weapon inflicting serious injury.

The essential elements of assault with a deadly weapon inflicting serious injury are "(1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Ryder*, 196 N.C. App. 56, 66, 674 S.E.2d 805, 812 (2009) (citation omitted). To prove these elements, the State presented the following evidence. First, Demetrius testified without objection that when he and defendant were driving away from Martinsville, defendant broke down crying and admitted to shooting someone at the Icehouse. Second, the State called a witness who was present at the scene of the altercation; he identified defendant and Shavon as the two shooters. Third, Melissa testified that she drove defendant into the country and watched him throw his gun into the woods. Fourth, the State put on expert testimony which established that

shell casings from the scene of the crime and the bullet lodged in Seay's shoulder were all fired from defendant's gun. Fifth, and most importantly, defendant took the stand at trial and admitted to the following: (1) firing his gun at the victims when he thought that he heard a gunshot coming from their direction; (2) getting Melissa to drive him into the country so that he could dispose of his gun; and (3) telling Demetrius on the drive away from Martinsville that he thought he had killed someone. Defendant specifically admitted at trial that he "unloaded [his] gun" into what he estimated to be five people, with three being shot. Thus, the State presented extremely compelling evidence that defendant committed the crime of assault with a deadly weapon inflicting serious injury, even excluding defendant's custodial statements.

Defendant failed to show that, absent the admission of his custodial statements, there existed a reasonable possibility that a different result would have been reached at trial. Therefore, defendant has failed to carry the burden of showing that the trial court's failure to enter a finding pursuant to section 7B-2101(d) was prejudicial. *See Small*, 328 N.C. at 187, 400 S.E.2d at 419; N.C. Gen. Stat. § 15A-1443(a).

In the alternative, defendant argues that this Court should review the trial court's failure to comply with section 7B-2101(d) for plain error. Given that the plain error standard imposes a higher burden on defendant than prejudicial error, *State v. Lanier*, 165 N.C. App. 337, 354, 598 S.E.2d 596, 607 (2004) (citation omitted), we hold that the trial court's failure to comply with section 7B-2101(d) could not have amounted to plain error where the error was not prejudicial.

### III. Ineffective Assistance of Counsel

Defendant next argues that he was deprived of effective assistance of counsel guaranteed by the North Carolina and federal constitutions because his trial counsel failed to move to suppress defendant's custodial admissions. We find no prejudicial error.

In order to establish ineffective assistance of counsel, defendant has the burden of showing that trial counsel's performance "fell below an objective standard of reasonableness." *State v. Fletcher*, 354 N.C. 455, 481, 555 S.E.2d 534, 550 (2001) (citation omitted). To meet this burden, defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as

> the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). The element of prejudice can only be met if "there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985) (citation omitted). "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Harrison*, 169 N.C. App. 257, 262, 610 S.E.2d 407, 411 (2005) (citation omitted), *aff'd per curiam*, 360 N.C. 394, 627 S.E.2d 461 (2006). After careful review, we hold that because defendant cannot establish prejudice by trial counsel's alleged error, he cannot prevail on the issue of ineffective assistance of counsel.

First, there is no reasonable probability that the trial court would have allowed a motion to suppress the custodial

statements if one had been entered. Defendant concedes in his brief on appeal that he signed a waiver of rights form, that the first interview was stopped after he asserted his right to remain silent, that the waiver form was again presented before the second interview, and that the second interview was again stopped when defendant asserted his right to counsel. Defendant further concedes that the third interview, at which defendant provided the only incriminating statements, was initiated by defendant, not the police officers. Defendant's behavior indicated that he understood how to exercise his constitutional rights and that he intentionally waived those rights by initiating the third and final interview. *See State v. Crawford*, 83 N.C. App. 135, 137, 349 S.E.2d 301, 302 (1986) (noting that a defendant may waive the right to remain silent and the right to counsel by initiating the conversation in which he waives those rights). Furthermore, video footage of these interviews shows that the officers carefully explained each of defendant's *Miranda* and juvenile rights before defendant signed the waiver form and that defendant verbally acknowledged that he understood these rights and the effect of the waiver. Therefore, had the trial court been faced with a motion to suppress, it would have had ample evidence before it to deny the

motion and conclude that defendant's waiver of his rights was knowing, willing, and understanding. *See* N.C. Gen. Stat. § 7B-2101(d).

Second, even assuming that defendant's trial counsel would have been successful in keeping defendant's custodial statements out of evidence, there is no reasonable probability that the result at trial would have been different. As discussed in more detail above, the State produced a wide array of compelling evidence, including defendant's own testimony at trial, which independently proved all of the essential elements of the charge of assault with a deadly weapon inflicting serious injury.

Therefore, because defendant cannot establish that he was prejudiced by his trial counsel's failure to move to suppress the custodial statements, we need not address whether counsel's behavior was deficient. *See Harrison*, 169 N.C. App. at 262, 610 S.E.2d at 411. Defendant's argument is overruled.

### IV. Indictment

Defendant's final argument is that the short-form indictment used to charge defendant was unconstitutional because it did not separately allege premeditation or deliberation or a specific felony upon which felony murder could have been based. Defendant acknowledges that the North Carolina Supreme Court

decided this issue in the State's favor in *State v. Braxton*, 352 N.C. 158, 173-75, 531 S.E.2d 428, 436-38 (2000), and that this Court has no authority to overturn that decision. Thus, defendant merely presents this issue to preserve it for later review, and his argument is overruled.

## Conclusion

After careful review, we remand for resentencing pursuant to section 15A-1340.19B(a)(1). We find no prejudicial error as to the trial court's failure to enter findings under section 7B-2101(d) or trial counsel's failure to move to suppress defendant's custodial statements. Finally, defendant's contention as to the indictment is overruled.


NO PREJUDICIAL ERROR; REMANDED FOR RESENTENCING.

Judges MCGEE and ELMORE concur.

Report per Rule 30(e).