McCULLOUGH, Judge.
 

 *660
 
 Wesley Patterson ("defendant") appeals from judgments entered upon his convictions for breaking and entering, habitual larceny, and for attaining habitual felon status. For the following reasons, we find no error.
 

 I.
 
 Background
 

 On 27 January 2014, a Mecklenburg County Grand Jury indicted defendant in file number 14 CRS 201911 on one count of felonious larceny for stealing a laptop computer and iPad valued in excess of $1,000.00. Additional indictments returned on 31 March 2014 charged defendant for attaining habitual felon status in file number 14 CRS 12560 and for habitual larceny in file number 14 CRS 12561. Superseding indictments adding one count of felonious breaking and entering and one count of felonious possession of stolen goods in file number 14 CRS 201911 were later returned on 4 August 2014 and 8 December 2014. In total, defendant was indicted for felonious larceny, felonious breaking and entering, felonious possession of stolen goods, habitual felon status, and habitual larceny.
 
 [1]
 

 Pretrial matters, including how the court should proceed with the habitual larceny charge, were addressed on 16 and 17 March 2015. Those pretrial matters included the State's motion to join defendant's charges for trial and defendant's motion to dismiss on the ground that the crime of habitual misdemeanor larceny subjects defendant to double jeopardy. The State's motion to join was allowed and defendant's motion to dismiss was denied. The case then proceeded to trial before the Honorable Robert T. Sumner in Mecklenburg County Superior Court on 17 March 2015.
 

 During a break in jury selection, and prior to the jury being empaneled, defendant admitted to the prior misdemeanor larceny convictions needed to establish habitual larceny in order to keep evidence of the prior larcenies from being presented at trial.
 

 The State's evidence at trial tended to show the following: On 14 January 2014, a man entered the offices of First Financial Services, Inc. ("First Financial"), in the Fairview One Center on Fairview Road in Charlotte (the "office building"). Brian Gillespie, a loan officer employed
 
 *661
 
 by First Financial, observed the man, whom he had never seen before, coming out of his boss' office. Gillespie and the man made eye contact as the man surveyed the office, but they did not speak because Gillespie was on the phone with a customer. The man then left. Gillespie described the man as tall, slender, African-American, and wearing a newsboy cap with a button in the front.
 

 Approximately thirty minutes later, David Hay, Gillespie's boss, returned to his office from a meeting. Gillespie then went to Hay's office to inquire who the man was. Hay was unaware anyone had been in his office and, at that time, noticed his computer bag containing his MacBook Air laptop and iPad was missing. Hay began searching the office
 
 *519
 
 building and parking garage for anyone matching the description provided by Gillespie before realizing that he could track his iPad through an application on his cell phone. Hay then used his phone to track his iPad moving on Old Pineville Road. Hay and his coworker, Neil Nichols, then drove to a strip mall across the road from the Woodlawn light rail station where the tracking application indicated the iPad was. As Hay and Nichols turned into the parking lot, Hay saw the man walking with the computer bag over his shoulder. At trial, Hay identified the man as defendant.
 

 As defendant headed across the street towards the light rail station, Nichols called 911 while Hay flagged down a nearby police officer. That officer, Ricardo Coronel, then approached defendant, who was sitting on a bench at the Woodlawn light rail station with the computer bag next to him. Officer Coronel first asked defendant if the computer bag was his, but defendant did not respond. Officer Coronel then asked for defendant's identification. After verifying defendant's identification and that the computer bag belonged to Hay, Officer Coronel arrested defendant.
 

 Gillespie was then summoned to the Woodlawn light rail station to identify defendant. Upon the arrival of Gillespie, the police conducted a "show-up" identification, during which Gillespie positively identified defendant as the man he had seen exiting Hay's office.
 

 Defendant was then taken to the Wilkinson Boulevard Police Station, where he was interviewed by Officer James Crosby and Detective Tammy Post. A redacted version of the videotaped interview was published to the jury at trial. The State also published surveillance video footage from the interior of the light rail train and of the Woodlawn light rail platform. Defendant initially objected that the video lacked foundation, but after a
 
 voir dire
 
 examination of the light rail employee and lengthy bench conference, the objection was overruled. Ray Alan Thompson, a safety
 
 *662
 
 coordinator for the Charlotte Area Transit, played the surveillance footage for the jury. Neither the State nor the Defense commented on the video.
 

 The State then played the surveillance footage for a second time during the testimony of Detective Post. During the playing of the surveillance footage, the State asked Detective Post to indicate when she recognized someone. Without objection, Detective Post identified defendant in the surveillance footage from inside the train. When Detective Post further testified that defendant was carrying the computer bag, defendant offered a general objection that was overruled. Detective Post then continued to testify that she could tell it was defendant in the video because she was familiar with defendant and because defendant is very tall. When the State asked Detective Post if "[defendant was] wearing the same clothing [that] he was wearing when [she later] interviewed him[,]" defendant's objection on the basis of "leading" was sustained. Detective Post then continued to testify as surveillance footage of the train and platform recorded by various cameras at different angles was shown. Detective Post repeatedly identified defendant and indicated defendant was holding the computer bag in the surveillance footage. Detective Post also testified that defendant was wearing the same clothes in surveillance footage that he wore when she observed him in the back of a police car and when she interviewed him.
 

 The following day, the State also introduced into evidence a still image showing a person exiting the office building on the day the computer bag was taken. When Detective Post was asked who the individual in the photograph was, the defense objected and the objection was overruled. Detective Post then identified defendant in the photograph. The State followed up on the identification by asking Detective Post if anything was peculiar about defendant in the picture. Again, defendant objected and the objection was overruled. Detective Post then responded that a rectangular object, consistent with the shape of the computer bag, appeared to be tucked under defendant's shirt. After this testimony, both the State and defendant rested.
 

 On 19 March 2015, the jury returned verdicts finding defendant guilty of felonious larceny pursuant to unlawful entering, felonious
 
 *520
 
 entering, and felonious possession of stolen goods or property pursuant to unlawful entering. Defendant then pled guilty to attaining habitual felon status as part of a plea arrangement whereby the State agreed to consolidate defendant's convictions into a single judgment for sentencing. Upon defendant's convictions and the plea arrangement, the trial judge consolidated the breaking and entering, habitual larceny, and
 
 *663
 
 habitual felon offenses and entered a single judgment sentencing defendant to a term of 110 to 144 months. The trial judge arrested judgment on the felony larceny and possession of stolen goods or property offenses. Defendant gave notice of appeal.
 

 II.
 
 Discussion
 

 Defendant asserts that this case turned on whether the evidence was sufficient to convince the jury that he was the person seen in the office building and that the State's evidence placing him in the office building was the weakest part of the State's case. Thus, defendant claims the State elicited identification testimony from Detective Post to bolster its case.
 

 The sole issue on appeal is whether the trial court erred in allowing portions of Detective Post's testimony into the evidence at trial. Specifically, defendant contends the trial court erred in allowing Detective Post to (1) identify defendant in light rail surveillance footage, (2) testify that defendant could be seen holding David Hay's computer bag in the surveillance footage, and (3) identify defendant in the still image from the office building. Defendant contends that the challenged testimony of Detective Post was inadmissible and prejudicial lay witness opinion testimony because "Detective Post was in no better position than the jury to evaluate the evidence[.]"
 

 The N.C. Rules of Evidence provide that "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2015). "Ordinarily, opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury."
 
 State v. Fulton
 
 ,
 
 299 N.C. 491
 
 , 494,
 
 263 S.E.2d 608
 
 , 610 (1980). But, lay opinion testimony identifying a person in a photograph or videotape may be allowed " 'where such testimony is based on the perceptions and knowledge of the witness, the testimony would be helpful to the jury in the jury's fact-finding function rather than invasive of that function, and the helpfulness outweighs the possible prejudice to the defendant from admission of the testimony.' "
 
 State v. Belk
 
 ,
 
 201 N.C.App. 412
 
 , 415,
 
 689 S.E.2d 439
 
 , 441 (2009) (quoting
 
 State v. Buie
 
 ,
 
 194 N.C.App. 725
 
 , 730,
 
 671 S.E.2d 351
 
 , 354-55 (2009),
 
 disc. review denied
 
 ,
 
 363 N.C. 375
 
 ,
 
 679 S.E.2d 135
 
 (2009) ),
 
 disc. review denied
 
 ,
 
 364 N.C. 129
 
 ,
 
 695 S.E.2d 761
 
 (2010). In
 
 Belk,
 
 this Court identified the following factors as relevant in the above analysis:
 

 *664
 
 (1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial.
 

 Id
 
 . Applying these factors in
 
 Belk
 
 , this Court held that the trial court erred by admitting an officer's lay opinion testimony identifying the defendant as the person depicted in surveillance video footage "[b]ecause [the o]fficer ... was in no better position than the jury to identify [the d]efendant as the person in the surveillance video[.]"
 
 Id
 
 . at 414,
 
 689 S.E.2d at 441
 
 . This Court further found the error to be prejudicial and remanded for a new trial.
 
 Id
 
 .
 

 When a trial court's ruling on the admissibility of lay witness opinion testimony is properly preserved for appellate review, we review for an abuse of discretion.
 
 See
 

 State v. Washington
 
 ,
 
 141 N.C.App. 354
 
 , 362,
 
 540 S.E.2d 388
 
 , 395 (2000),
 
 disc. review denied
 
 ,
 
 353 N.C. 396
 
 ,
 
 547 S.E.2d 427
 
 (2001). An abuse of discretion occurs when the trial judge's decision "lacked any basis in reason or was so arbitrary that it could not have
 
 *521
 
 been the result of a reasoned decision."
 
 Williams v. Bell
 
 ,
 
 167 N.C.App. 674
 
 , 678,
 
 606 S.E.2d 436
 
 , 439 (quotation marks and citation omitted),
 
 disc. review denied
 
 ,
 
 359 N.C. 414
 
 ,
 
 613 S.E.2d 26
 
 (2005). Thus, as this Court recognized in
 
 Belk
 
 , "we must uphold the admission of [an officer's] lay opinion testimony if there was a rational basis for concluding that [the officer] was more likely than the jury [to correctly] identify [the d]efendant as the individual in the surveillance footage."
 
 Belk
 
 ,
 
 201 N.C.App. at 417
 
 ,
 
 689 S.E.2d at 442
 
 .
 

 Yet, as an initial matter, we must decide whether defendant preserved these issues for appeal. The State contends defendant did not.
 

 "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent."
 
 State v. Eason
 
 ,
 
 328 N.C. 409
 
 , 420,
 
 402 S.E.2d 809
 
 , 814 (1991) ;
 
 see also
 
 N.C. R. App. P. 10(a)(1). "A general objection, when overruled, is ordinarily not adequate unless the evidence, considered as a whole, makes it clear that there is no purpose to be served from admitting the evidence."
 
 State v. Jones
 
 ,
 
 342 N.C. 523
 
 , 535,
 
 467 S.E.2d 12
 
 , 20 (1996). "Where evidence is admitted without objection, the benefit of a
 
 *665
 
 prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence."
 
 State v. Wilson
 
 ,
 
 313 N.C. 516
 
 , 532,
 
 330 S.E.2d 450
 
 , 461 (1985). Similarly, "[a] defendant waives any possible objection to testimony by failing to object to [the] testimony when it is first admitted."
 
 State v. Davis
 
 ,
 
 353 N.C. 1
 
 , 19,
 
 539 S.E.2d 243
 
 , 256 (2000).
 

 As indicated above, all the challenged testimony in the present case was elicited by the State during the testimony of Detective Post. Upon review of the transcript, it is clear that defendant waived review of his challenges to Detective Post's testimony regarding what she observed in the surveillance footage from the light rail train and light rail platform. First, there was never an objection to Detective Post's repeated identifications of defendant in the surveillance footage. Second, although defendant did object the first time Detective Post testified that defendant was carrying the computer bag in the surveillance footage, that objection was general and the same testimony was later admitted without objection. Concerning Detective Post's testimony based on the still image from the office building, we find the preservation issue to be a closer call because defendant objected to both questions about the photograph. However, those objections were general and "the evidence, considered as a whole, [is not] clear that there is no purpose to be served from admitting the evidence."
 
 Jones
 
 ,
 
 342 N.C. at 535
 
 ,
 
 467 S.E.2d at 20
 
 .
 

 Nevertheless, because the preservation of the issues concerning Detective Post's identification of defendant in the still image is a close call, we feel compelled to note that even if defendant had properly preserved the issues for appellate review and the testimony was determined to be admitted in error, defendant is entitled to a new trial only if he was prejudiced by the error.
 

 A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant....
 

 N.C. Gen. Stat. § 15A-1443(a) (2015). Upon review of the evidence in this case, we hold defendant was not prejudiced by any error in allowing Detective Post's testimony. Unlike in
 
 Belk
 
 , where the State's case rested exclusively on the surveillance video and the officer's identification testimony from the video,
 
 201 N.C.App. at 418
 
 ,
 
 689 S.E.2d at 443
 
 , the
 
 *666
 
 State in the present case presented sufficient evidence besides Detective Post's testimony to allow the jury to determine defendant was at the office building and to identify defendant as the perpetrator.
 

 First, the jury was afforded the opportunity to view the surveillance footage and the still image. As defendant notes in his argument
 
 *522
 
 that Detective Post was in no better position to identify defendant than the jury, the jury could compare defendant's appearance in the surveillance footage and the still image to the appearance of defendant in the videotaped interview conducted immediately after defendant's arrest. Second, the State presented other evidence tending to place defendant in the office building, including an identification of defendant by Gillespie. Specifically, Gillespie testified that he observed a man exit Hay's office and later identified that man as defendant. Defendant acknowledges Gillespie's testimony, but contends that the testimony by itself could be considered skeptically; and further asserts the suggestive nature of "show-up" identifications increases the potential for unreliability.
 

 Defendant is correct that courts have criticized the use of show-up identifications because the practice of showing suspects singly to persons for the purpose of identification may be inherently suggestive.
 
 State v. Oliver
 
 ,
 
 302 N.C. 28
 
 , 44-45,
 
 274 S.E.2d 183
 
 , 194 (1981). Yet, show-up identifications "are not
 
 per se
 
 violative of a defendant's due process rights."
 
 State v. Turner
 
 ,
 
 305 N.C. 356
 
 , 364,
 
 289 S.E.2d 368
 
 , 373 (1982) (citing
 
 Manson v. Brathwaite
 
 ,
 
 432 U.S. 98
 
 ,
 
 97 S.Ct. 2243
 
 ,
 
 53 L.Ed.2d 140
 
 (1977) ). "An unnecessarily suggestive show-up identification does not create a substantial likelihood of misidentification where under the totality of the circumstances surrounding the crime, the identification possesses sufficient aspects of reliability."
 
 Id
 
 . We have explained as follows:
 

 Our courts apply a two-step process for determining whether an identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification. First, the Court must determine whether the identification procedures were impermissibly suggestive. Second, if the procedures were impermissibly suggestive, the Court must then determine whether the procedures created a substantial likelihood of irreparable misidentification.
 

 State v. Rawls
 
 ,
 
 207 N.C.App. 415
 
 , 423,
 
 700 S.E.2d 112
 
 , 118 (2010) (internal quotation marks and citations omitted). When determining if there is a substantial likelihood of irreparable misidentification,
 

 *667
 
 courts apply a totality of the circumstances test. For both in-court and out-of-court identifications, there are five factors to consider in determining whether an identification procedure is so inherently unreliable that the evidence must be excluded from trial: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
 

 Id
 
 . at 424,
 
 700 S.E.2d at 118-19
 
 (internal quotation marks and citations omitted).
 

 In this case, Gillespie was summoned to the light rail station to identify someone detained as a suspect. That person, defendant, was then brought before Gillespie from the back of a police car for identification. This process was unduly suggestive. We, however, do not conclude that there was a substantial likelihood of irreparable misidentification in this case where Gillespie observed defendant exit Hay's office, observed defendant for several minutes and even made eye contact with defendant, was able to give a good description of defendant, did not second guess his identification, and the identification occurred within hours after he had observed him in the office building. Thus, we are not persuaded that Gillespie's testimony was insufficient to allow the jury to find that defendant was seen exiting Hay's office. Moreover, the evidence shows that Hay immediately noticed a man with his computer bag when he arrived at the strip mall while tracking his iPad and later identified that man as defendant. The evidence also shows that defendant was sitting on a bench with the computer bag containing Hay's laptop and iPad when he was approached and detained by police.
 

 In light of the evidence presented at trial showing that defendant was present at the office building and was seen with the computer bag in his possession, even if Detective
 
 *523
 
 Post's testimony was admitted in error, defendant was not prejudiced because there is not a reasonable possibility that a different result would have been reached at trial.
 

 III.
 
 Conclusion
 

 For the reasons discussed above, we hold defendant failed to preserve the issues for appeal by proper objections at trial; but, in any event,
 
 *668
 
 any error by the trial court in admitting the testimony of Detective Post was not prejudicial given the other identification evidence presented at trial.
 

 NO ERROR.
 

 Judges ELMORE and INMAN concur.
 

 [1]
 

 Habitual larceny raises a misdemeanor larceny to a felony if the accused has four prior misdemeanor larcenies.
 
 See
 

 N.C. Gen. Stat. § 14-7
 
 (2015).